UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES A. GHENT, JR.,

                              Plaintiff,

                                                                                       DECISION AND ORDER

                                                                                       05-CV-6182L

                              v.

JOSEPH B. MOORE, et al.,

                              Defendants.
_____

      Plaintiff, James A. Ghent, Jr., an African-American male, commenced this action against his employer, the State University of New York ("SUNY") and four individual defendants, alleging that he has been discriminated against on account of his race. Plaintiff asserts causes of action under 42 U.S.C. §§ 1981 and 1983, and under the New York State Human Rights Law ("HRL"), Exec. L. § 296. Defendants have moved for summary judgment. For the reasons that follow, defendants' motion is granted.

**BACKGROUND**

      Plaintiff has been a part-time employee at SUNY's Empire State College ("Empire") since 1990. Until the Fall 2003 semester, plaintiff was employed as a mentor in the FORUM West

program, which is a degree program offered by Empire that is designed for working business professionals in Western New York.  FORUM West operates out of Empire's Niagara Frontier Center in Buffalo.

Throughout the relevant period, plaintiff was also employed as a mentor at the Genesee Valley Center ("GVC"), which is an Empire campus located in Rochester.  Plaintiff held the FORUM West and GVC positions pursuant to separate employment contracts, each of which was renewable annually.  *See* Dkt. #25-2 at 2.

In August 2003, defendant Robert W. Gerulat, the FORUM West program director and plaintiff's immediate supervisor at FORUM West, offered plaintiff a marketing position within FORUM West.  That new position, which, if plaintiff accepted, would have taken the place of plaintiff's mentor position at FORUM West, would have involved marketing FORUM West to minorities in the Rochester and Buffalo areas.  Gerulat Depo. Tr. (Dkt. #20 Ex. C) at 213.  Plaintiff declined Gerulat's offer, however.

Plaintiff's contract with FORUM West was not renewed upon its expiration on August 31, 2003, for reasons which will be discussed below.  Plaintiff has not worked at FORUM West since then, although he continues to be employed as a mentor at GVC.

Plaintiff filed the complaint in this action in April 2005.  In addition to SUNY and Gerulat, he has sued Joseph B. Moore, the President of Empire; Joyce B. Elliott, the Provost and Vice President for Academic Affairs of Empire; and Robert P. Milton, the Dean and Center Director of GVC.[1]

---

[1]Plaintiff states in his memorandum of law that "in light of testimony in this action,
(continued...)

The complaint alleges that throughout his employment by SUNY, plaintiff has been subjected to a "pattern and practice" of race discrimination in a number of ways. Now that discovery is complete, however, it is clear from the record before me that the real basis of plaintiff's claim is not that defendants have engaged in a pattern or practice of discrimination, but that plaintiff has been subjected to disparate treatment based on his race. Specifically, plaintiff alleges that the decision not to renew his FORUM West contract was motivated by racial animus.[2] Based on that allegation,

---

[1](...continued)
plaintiff has withdrawn his complaint against defendant Milton." Dkt. #25-9 at 2 n.1. Plaintiff's claims against Milton are therefore deemed to be withdrawn and are dismissed.

[2] Pattern-or-practice claims are typically asserted on behalf of a class of plaintiffs, who must demonstrate (usually through statistical evidence) that the defendant engaged in a pattern or practice of intentional discrimination. If the plaintiffs succeed in doing so, the court may fashion class-wide injunctive relief; if individual relief such as back pay is sought, the court proceeds to the "remedial" phase, in which the class members enjoy a presumption in their favor that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy. *See Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 158-59 (2$^d$ Cir. 2001).

It is unclear in this circuit whether an individual plaintiff may proceed on a pattern-or-practice theory. *See Walter v. Hamburg Central School Dist.*, No. 04-CV-996, 2007 WL 1480965, at *5 (W.D.N.Y. May 18, 2007) ("most districts in this Circuit have seriously questioned whether courts can consider pattern or practice claims outside the context of class actions, and one district has held that it cannot") (citing *Heap v. County of Schenectady*, 214 F.Supp.2d 263, 271 (N.D.N.Y. 2002) (dismissing pattern-or-practice claim as improper in the context of an individual disparate treatment case)); *see also Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004) (holding that a pattern-or-practice claim is not available to individual plaintiffs, although "pattern-or-practice evidence may be relevant to proving an otherwise-viable individual claim for disparate treatment").

In support of their summary judgment motion, defendants contend that plaintiff has failed to make out a pattern-or-practice claim. In response, plaintiff states that "[a]lthough each cause of action alleges a pattern and practice of race discrimination, the actionable conduct alleged herein is the non-renewal of plaintiff's contract with the Forum West Program." Plaintiff's Mem. of Law (Dkt. #25-9) at 4. The Court will therefore treat plaintiff's claims as only alleging disparate treatment based on the non-renewal of plaintiff's contract. In assessing that claim, however, the Court may take into account the purported pattern-and-practice evidence submitted
(continued...)

plaintiff alleges that defendants have unlawfully discriminated against him on the basis of race, with respect to the benefits, privileges, terms and conditions of plaintiff's contractual relationship with SUNY, in violation of 42 U.S.C. § 1981. He also asserts a claim under § 1983, alleging that defendants have denied him equal protection of the law in violation of his rights under the Fourteenth Amendment to the United States Constitution. Plaintiff's third cause of action alleges that defendants have discriminated against him on account of his race, in violation of the HRL. Plaintiff seeks injunctive relief "ordering and enjoining defendants to employ plaintiff on such terms and conditions as are comparable to similarly situated majority faculty members," Complaint at 8, compensatory and punitive damages, and costs and attorney's fees.[3]

---

[2](...continued)
by plaintiff. *See* Ghent Aff. (Dkt. #25) ¶¶ 97-108.

[3]The complaint also alleges, as part of its pattern-and-practice allegations, that plaintiff has been passed over for promotion in favor of less qualified "majority" faculty members. Dkt. #1 ¶ 33. Plaintiff admitted at his deposition that he did not apply for, or express any interest in, those positions, however. *See* Tamara B. Christie Decl. (Dkt. #20) Ex. A at 54, 56, 60, 65.

"To establish a prima facie case of discriminatory failure to promote, a plaintiff must 'allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion.'" *Kinsella v. Rumsfeld*, 320 F.3d 309, 314 (2$^d$ Cir. 2003) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2$^d$ Cir. 1998)); *see, e.g.*, *Constance v. Pepsi Bottling Co. of New York*, No. 03-CV-5009, 2007 WL 2460688, at *17 (E.D.N.Y. Aug. 24, 2007) (holding that "plaintiff's general expression of interest for ... a [particular] position [wa]s not sufficient to satisfy the application requirement"). Ghent does not even appear to allege that he "generally requested promotion," much less that he sought these particular jobs. In any event, Ghent's motion papers do not discuss the alleged failure to promote, and plaintiff thus appears to have abandoned this aspect of his claims.

**DISCUSSION**

**I. Summary Judgment:  General Principles**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  In deciding a motion for summary judgment, the evidence submitted must be viewed in the light most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Even if parties dispute material facts, summary judgment must be granted "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Golden Pacific Bancorp. v. F.D.I.C*, 375 F.3d 196, 200 ($2^d$ Cir. 2004) (internal citations and quotation marks omitted).  In addition, once the moving party has made a sufficient showing, "[t]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *Id.* (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 ($2^d$ Cir. 1998)).

The Second Circuit has stated that district courts should be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question.  Because direct evidence of an employer's discriminatory intent will rarely be found,

'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" *Schwapp v. Town of Avon*, 118 F.3d 106, 110 ($2^d$ Cir. 1997) (quoting *Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1224 ($2^d$ Cir. 1994)). However, summary judgment in an employment discrimination case may still be appropriate if the plaintiff relies "on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct." *Figueroa v. New York Health and Hospitals Corp.*, 500 F.Supp.2d 224, 228 (S.D.N.Y. 2007) (internal quotation marks omitted). As the Second Circuit has stated, "[t]he summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. Indeed, the salutary purposes of summary judgment–avoiding protracted, expensive and harassing trials–apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 ($2^d$ Cir. 1985); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 ($2^d$ Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases").

**II. Application to the Case at Bar**

**A. Claims Against SUNY**

Defendants contend that all claims against SUNY must be dismissed on the ground of sovereign immunity under the Eleventh Amendment. The Second Circuit has held that "[f]or Eleventh Amendment purposes, SUNY is an integral part of the government of the State [of New York] and when it is sued the State is the real party." *Garcia v. SUNY Health Sciences Ctr. of*

*Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (quoting *Dube v. SUNY*, 900 F.2d 587, 594 (2d Cir. 1990)). Insofar as plaintiff seeks relief against SUNY, therefore, his claims are barred by the Eleventh Amendment. *Id.*; *see also Dube*, 900 F.2d at 594 ("no relief, either legal or equitable, is available against SUNY"); *accord Banks v. SUNY*, No. 06-CV-239, 2007 WL 895505, at *7 (W.D.N.Y. Mar. 22, 2007).

Plaintiff's federal claims against the individual defendants in their official capacities, however, are not barred by the Eleventh Amendment to the extent that plaintiff seeks reinstatement to his previous employment at FORUM West. The Second Circuit has held that "claims for reinstatement to previous employment satisfy the *Ex parte Young* [209 U.S. 123 (1908)] exception to the Eleventh Amendment's sovereign immunity bar." *State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 96 (2d Cir. 2007); *see In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (under *Ex parte Young*, "a plaintiff may sue a state official acting in his official capacity–notwithstanding the Eleventh Amendment–for prospective, injunctive relief from violations of federal law") (internal quotation marks omitted); *see also Dotson v. Griesa*, 398 F.3d 156, 178 (2d Cir. 2005) ("A court order of reinstatement ... is not barred by sovereign immunity"). Such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities. *See Santiago v. New York State Dep't of Correctional Services*, 945 F.2d 25, 32 (2d Cir. 1991) ("a plaintiff seeking prospective relief from the state must name as defendant a state official rather than the state or a state agency directly, even though in reality the suit is against the state"); *Banks*, 2007 WL 895505, at *7 ("A state *official* ... may be sued in his official capacity in a federal forum to enjoin conduct that violates the federal Constitution"); *Dicks v.*

*Binding Together, Inc.*, No. 03 Civ. 7411, 2007 WL 1462217, at *5 (S.D.N.Y. May 18, 2007) ("Plaintiff's claims for prospective injunctive relief are not barred by the Eleventh Amendment–provided, however, that Plaintiff brings those claims against a state official, rather than the state itself").

In addition, plaintiff's HRL claim against SUNY must be dismissed in its entirety. "[A] federal court's grant of injunctive relief against a state official may *not* be based on violations of state law." *Dube*, 900 F.2d at 595. *See Banks*, 2007 WL 895505, at *7 ("State officials may not ... be sued in their official capacity for violations of state law"); *Smith v. SUNY*, No. 1:00-CV1454, 2003 WL 1937208, at *7 n. 7 (N.D.N.Y. Apr. 23, 2003) ("*Ex parte Young* does not apply to Plaintiffs' New York Human Rights Law claims to the extent that they seek prospective relief against the individual Defendants in their official capacities because the claims for prospective relief are based upon violations of state law") (citing *Dube*, 900 F.2d at 595); *Jacobs v. SUNY at Buffalo Sch. of Med.*, 204 F.Supp.2d 586, 593 (W.D.N.Y. 2002) (dismissing HRL claims as to SUNY on Eleventh Amendment grounds).

**B. Claims Against the Individual Defendants**

As stated, plaintiff's claims are brought under 42 U.S.C. §§ 1981 and 1983 and the HRL. In general, discrimination claims brought under those statutes are subject to the same analysis as claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2$^d$ Cir. 2000); *Davis v. Wisconsin Dep't of Corr.*, 445 F.3d 971, 976 (7th Cir. 2006); *Hawkins v. County of Oneida*, 497 F.Supp.2d 362,

376 (N.D.N.Y. 2007). The chief difference between Title VII and the statutes on which Ghent's claims are based is that "in certain circumstances a Title VII claim may be established through proof of a defendant's mere negligence, without a showing of discriminatory intent," whereas "a plaintiff pursuing a claimed violation of § 1981 or denial of equal protection under § 1983 must show that the discrimination was intentional." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2$^d$ Cir. 2004) (citations omitted). In addition, whereas individuals may not be held personally liable under Title VII, *see Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000); *Falso v. Sutherland Global Services*, 494 F.Supp.2d 207, 209 (W.D.N.Y. 2007), individual liability may arise under §§ 1981 and 1983 and the HRL upon a showing that the individual defendants were personally involved or participated in the violation. *Patterson*, 375 F.3d at 226; *Hawkins*, 497 F.Supp.2d at 376; *Walter v. Hamburg Central School Dist.*, No. 04-CV-996, 2007 WL 1480965, at *9 (W.D.N.Y. May 18, 2007) (individual liability may be imposed under the HRL if the defendant "actually participated in the conduct giving rise to the discrimination claim").

Plaintiff's claims of employment discrimination are thus subject to the burden-shifting analysis applied to Title VII claims, as articulated by the Supreme Court in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, plaintiff must establish a prima facie case of discrimination by demonstrating that: (1) he belongs to a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) the action took place under circumstances giving rise to an inference of discrimination. *See Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2$^d$ Cir. 2001). Once plaintiff has established a prima facie case, the burden shifts to defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action.

*See James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2ᵈ Cir. 2000). The burden then returns to plaintiff to supply evidence that the reason offered by the defendant is a pretext for unlawful discrimination. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 508 (1993).

Plaintiff's race is a protected category, and defendants do not appear to dispute that plaintiff was qualified for his position as mentor, although they do assert that there were some problems with his performance in that position.

Defendants contend, however, that plaintiff has not made out a prima facie case of discrimination because he has not shown that he was subjected to an adverse employment action. Specifically, defendants contend that plaintiff has not demonstrated that the non-renewal of his contract with FORUM West constituted an adverse action.

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Kassner v. 2ⁿᵈ Avenue Delicatessen Inc.*, 496 F.3d 229, 238 (2ᵈ Cir. 2007) (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2ᵈ Cir. 2000)). "An 'adverse employment action' is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Joseph v. Leavitt*, 465 F.3d 87, 90 (2ᵈ Cir. 2006) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2ᵈ Cir. 2003)).⁴

---

⁴In *Burlington Northern & Santa Fe Ry. Co. v. White*, ___ U.S. ___, 126 S.Ct. 2405 (2006), the Supreme Court held that a lower standard for "adverse actions" applies to claims of unlawful retaliation than to claims of unlawful discrimination. Specifically, the Court held "that the anti-retaliation provision [of Title VII], unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment." 126 S.Ct. 2412-13. In retaliation cases, the Court held, the plaintiff need only "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2415 (internal quotation marks omitted).

(continued...)

To the extent that defendants argue that the non-renewal of plaintiff's FORUM West contract, as a matter of law, could not constitute an adverse action, I am not persuaded by this assertion. Defendants characterize that nonrenewal as simply a "decrease in [plaintiff's] teaching load," Defendants' Mem. of Law at 11, but it seems obvious that more than that occurred here. Up until the Fall 2003 semester, plaintiff held two part-time positions at Empire–one at FORUM West and one at GVC–and he lost one of those two positions. Plaintiff's FORUM West contract was not renewed, and, since there was apparently no offsetting increase in plaintiff's responsibilities or pay at GVC, plaintiff's total salary presumably decreased. In general, the non-renewal of an employment contract satisfies the adverse-action requirement for purposes of a plaintiff's prima facie case. *See Evans-Marshall v. Board of Educ. of Tipp City Exempted Village School Dist.*, 428 F.3d 223, 232 (6th Cir. 2005) (nonrenewal of public high school teacher's contract constituted adverse employment action for purposes of First Amendment retaliation claim); *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999) (en banc) (listing "discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote" as examples of adverse actions in employment); *Hernandez-Mejias v. General Elec.*, 428 F.Supp.2d 4, 8 (D.P.R. 2005) ("we agree with the overwhelming majority of courts that

---

[4](...continued)
*Burlington Northern* left intact, however, the rule that to be considered "adverse" for purposes of a substantive discrimination claim, an employer's action must amount to a "materially adverse change in the terms and conditions of employment [that] is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Croswell v. Triborough Bridge and Tunnel Authority*, No. 03 Civ. 2990, 2007 WL 2274252, at *7 (S.D.N.Y. Aug. 7, 2007) (quoting *DeMoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006)). *See Higgins v. Gonzales*, 481 F.3d 578, 589 (8th Cir. 2007); *Piecy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007); *Evarts v. Southern New England Tel. Co.*, No. 00CV1124, 2006 WL 2864716, at *8 n. 12 (D.Conn. Oct. 2, 2006). *See also Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) (district court erred in applying "material change in the terms and conditions of his employment" adverse-action standard for discrimination claims to plaintiff's retaliation claim).

non-renewal of an employment contract constitutes an adverse employment action"); *Kabes v. School Dist. of River Falls*, 387 F.Supp.2d 955, 975 (W.D.Wis. 2005) ("Defendants' nonrenewal of plaintiff Kabes's contract constitutes an adverse employment action"); *Sloat v. Rapid City Area School Dist. No. 51-4*, 393 F.Supp.2d 922, 930 (D.S.D. 2005) (nonrenewal of teacher's one-year contract was adverse employment action sufficient to satisfy requirement for prima facie case of age discrimination).

Defendants also argue that under the particular facts of this case, plaintiff cannot demonstrate that he suffered an adverse action because defendants offered him another position in marketing, which plaintiff turned down. In response, plaintiff contends that the offer was in itself evidence of discriminatory animus, because it was based on the stereotypical notion that plaintiff, as an African-American, would be best suited for a position in which he would be interacting with minority individuals. *See Knight v. Nassau County Civil Service Comm'n*, 649 F.2d 157 (2[d] Cir. 1981) (involuntary transfer of black employee to minority recruitment constituted impermissible classification based on race in violation of both Title VII and Equal Protection Clause, since it was "based on a racial stereotype that blacks work better with blacks and on the premise that Knight's race was directly related to his ability to do the job").

I find it unnecessary to decide, however, whether plaintiff did suffer an adverse action. Defendants have proffered a facially legitimate reason for their decision not to renew plaintiff's FORUM West mentoring contract: they contend that there were significant problems with plaintiff's job performance as a mentor at FORUM West. They allege that they had received complaints from several students about plaintiff, and that plaintiff had a "negative attitude" with respect to his job.

It was for those reasons, defendants contend, that they decided to offer him a switch to a marketing position, and when plaintiff turned that offer down, they had little choice but to let him go.

"Since defendant[s] ha[ve] proffered a legitimate, nondiscriminatory reason for [their] actions, I will proceed to the ultimate issue of whether plaintiff[] ha[s] presented sufficient evidence of pretext to give rise to a genuine issue of material fact." *Kourofsky v. Genencor Intern., Inc.*, 459 F.Supp.2d 206, 211-12 (W.D.N.Y. 2006); *see United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant"); *Wado v. Xerox Corp.*, 991 F.Supp. 174, 187 (W.D.N.Y. 1998) (where defendant proffered legitimate, nondiscriminatory reasons for plaintiffs' terminations, court would "assume that [each plaintiff] ha[d] made out a *prima facie* case, and proceed to consider whether the plaintiff ha[d] presented sufficient evidence to create a triable issue of fact about whether Xerox's proffered reason [wa]s a pretext for discrimination"), *aff'd sub nom. Smith v. Xerox Corp.*, 196 F.3d 358 (2$^{d}$ Cir. 1999), *overruled on other grounds by Meacham v. Knolls Atomic Power Lab.*, 461 F.3d 134 (2$^{d}$ Cir. 2006).

Plaintiff has not, however, shown that there are any genuine issues of material fact concerning whether defendants' proffered reasons for their actions are pretexts for *unlawful discrimination*. Defendants are therefore entitled to summary judgment, regardless of whether plaintiff was subjected to an adverse employment action. *See Lizardo v. Denny's, Inc.*, 270 F.3d 94, 103 (2$^{d}$ Cir. 2001) ("Evidence of pretext, ... even combined with the minimal showing necessary to establish a prima facie case ..., does not mandate a denial of summary judgment. The court must

examine the entire record to determine if plaintiffs meet their ultimate burden of persuading the fact-finder of a central element of a 1981 claim: namely, that defendants intentionally discriminated against them on the basis of their race") (citations omitted.); *Maglietti v. Nicholson*, No. 3-05-cv-1819, 2007 WL 2904192, at *4 (D.Conn. Sept. 29, 2007) ("establishing a prima facie case and offering evidence of pretext alone does not suffice to establish a finding of gender discrimination") (citing *McGuinness v. Lincoln Hall*, 263 F.3d 49, 55 ($2^d$ Cir. 2001)).

To a great extent, plaintiff, in response to defendants' motion, simply takes issue with their evaluation of his performance as a mentor. Plaintiff's subjective opinion of his own performance, however, is not enough to give rise to a genuine issue of material fact in this regard. *Orosco v. Long Island Jewish Med. Ctr.*, No. 05-CV-3418, 2007 WL 2078300, at *9 (E.D.N.Y. July 18, 2007); *see also Jimoh v. Ernst & Young*, 908 F.Supp. 220, 226 (S.D.N.Y. 1995) (employee's disagreement with his employer's evaluation of his performance is insufficient to establish discriminatory intent).

In addition, the alleged problems with plaintiff's performance that defendants rely on are well documented by contemporaneous documents and notations in the record. *See* Dkt. #20-2 at 77-84. While that alone does not establish that the problems were genuine, or that defendants' proffered reasons for their actions are not pretextual, it does indicate that those proffered reasons are not purely after-the-fact justifications for not renewing plaintiff's contract. Plaintiff admits that there were "difficulties" with one of his mentees in particular, *see* Plaintiff's Aff. ¶¶ 64-65, and although he may believe that this did not warrant defendants' decision not to renew his FORUM West contract, the Court does not "sit as a super-personnel department" to reexamine defendant's decisions in this regard. *Stern v. Trustees of Columbia University in City of New York*, 131 F.3d 305, 315 ($2^d$ Cir.

1997); *see also Paddock v. Brockport*, 418 F.Supp.2d 288, 296 (W.D.N.Y. 2006) ("It is not the Court's role to decide whether SUNY made a bad employment decision when it terminated" plaintiff). While plaintiff has presented evidence that other students considered him to be an excellent mentor, it is hardly unusual for teachers or mentors to receive mixed reviews from their students or mentees. Again, it is not the Court's task to decide whether plaintiff was a good or a bad mentor, but to decide whether there are any issues of fact concerning whether defendants' stated opinions of plaintiff's performance are pretextual. I do not believe that there are.

Plaintiff also notes that in May 2001, Gerulat sent an email to the deans of two academic centers within Empire, stating that "[a]s a primary mentor, Jim [Ghent] provides his students with solid degree planning advice in a caring and effective way." Dkt. #25 ¶ 30 and Ex. B. Plaintiff contends that this contradicts Gerulat's later statements expressing dissatisfaction with plaintiff's performance.

In fact, this undercuts plaintiff's allegations of discriminatory animus on Gerulat's part. Just as the Second Circuit has observed that "where the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire," *Schnabel v. Abramson*, 232 F.3d 83, 91 (2$^d$ Cir. 2000) (quoting *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2$^d$ Cir. 1997)), so it is difficult to see why Gerulat would have praised plaintiff's performance in May 2001, and then about two years later, have decided to trump up some purported problems with plaintiff's performance because of Gerulat's previously unmanifested racial animus.

Plaintiff also alleges that during the relevant time period, he was "the sole African-American faculty member in the Forum West Program," Complaint ¶ 33(a), and that historically, minority faculty numbers at Empire have been "below the target goal." Plaintiff's Aff. (Dkt. #25) ¶ 100. Without other evidence of discrimination, however, that alone is not probative of unlawful discrimination. *See Davis v. Oyster Bay-East*, No. 03-CV-1372, 2006 WL 657038, at *10 (E.D.N.Y. Mar. 9, 2006) ("the mere fact that Plaintiff was the only African American stenographer, without more, is insufficient to establish pretext"); *Washington v. Martinez*, No. Civ.A. 03-3529, 2004 WL 632705, at *6 (E.D.Pa. Jan. 28, 2004) ( "Although plaintiff was the only African-American in the office she has presented no evidence that she would have been treated differently had she been a white person or that any of her coworkers' actions were motivated by her race"); *Padob v. Entex Information Serv.*, 960 F.Supp. 806, 813 (S.D.N.Y. 1997) ("the fact of [plaintiff's] being the only woman Corporate Sales Manager in her position, standing alone, does not create a genuine issue of material fact as to pretext based on gender"); *Walker v. Marriott Facilities Mgmt.*, No. 95-3273, 1995 WL 481511, at *2 (E.D.Pa. Aug. 11, 1995) ("Plaintiff merely asserts that he 'was the only black person employed in a management capacity in his unit.' He does not allege that similarly situated persons outside the protected class were retained. ... Thus, Plaintiff has not stated a claim of race or gender based discrimination").

Finally, I am not persuaded by plaintiff's contention that Gerulat's offer of the marketing position is itself evidence of discriminatory animus because it was based on the notion that, as an African-American, plaintiff was best suited for a position that involved dealing with other minority individuals. First, the cases cited by plaintiff, *Knight* and *Patrolmen's Benevolent Ass'n of the City*

*of New York v. City of New York*, 74 F.Supp.2d 321, 338 (S.D.N.Y. 1999), are distinguishable from the case at bar. In both of those cases, the employers admitted that they had assigned the employees to certain positions because of the employees' race, but contended that their actions were permissible under the "bona fide occupational qualification" ("BFOQ") defense to Title VII claims. As the courts in *Knight* and *Patrolmen's Benevolent Ass'n* explained, however, the BFOQ defense does not apply to discrimination based on race. *Knight*, 649 F.2d at 157; *Patrolmen's Benevolent Ass'n*, 74 F.Supp.2d at 337.

Defendants in the case at bar do not rely on a BFOQ defense, and that defense is not at issue in this lawsuit. Defendants do not contend that they offered the marketing position to plaintiff because of his race, but because they were dissatisfied with his performance as a mentor, and because plaintiff had previously told defendants that "he had been very active in marketing activities for the Forum West program in the past." Gerulat Depo. Tr. (Dkt. #20-2) at 213.

In any event, even if a factfinder believed that defendants' offer of the marketing position to plaintiff was based in part on his race, I find that to be insufficient to give rise to a genuine issue of fact concerning whether the decision not to renew plaintiff's FORUM West mentoring contract was motivated by racial animus. There is simply no evidence that plaintiff's race played any part in that decision, which was clearly not contingent on plaintiff's acceptance of the marketing position. Defendants could lawfully have simply declined to renew plaintiff's mentoring contract, without making *any* offer of other employment. That they chose to offer him an alternative position instead, even one that may have been related in some way to his race, is not evidence that the decision not to renew the mentoring contract was racially motivated.

**CONCLUSION**

Defendants' motion for summary judgment (Dkt. #19) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       October 23, 2007.